UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT EVAN BOURNE,

                                  Plaintiff,

            v.

ELDON VAIL, *et al.*,

                                  Defendant.

Case No.  C09-5199 BHS/KLS

ORDER TO SHOW CAUSE

This matter has been referred to Magistrate Judge Karen L. Strombom pursuant to 28 U.S.C. §
636(b)(1), and Local Rules MJR 3 and 4.  The case is before the Court for review of Plaintiff's complaint.
After reviewing the Complaint and balance of the record, the Court finds and orders as follows:

A complaint is frivolous when it has no arguable basis in law or fact.  *Franklin v. Murphy*, 745
F.2d 1221, 1228 (9th Cir. 1984).  When a complaint is frivolous, fails to state a claim, or contains a
complete defense to the action on its face, the court may dismiss an *in forma pauperis* complaint before
service of process under 28 US.C. § 1915(d).  *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (*citing
Franklin v. Murphy*, 745 F.2d 1221, 1227 (9th Cir. 1984)).

Although complaints are to be liberally construed in a plaintiff's favor, conclusory allegations of
the law, unsupported conclusions, and unwarranted inferences need not be accepted as true. *Id*. While the
court can liberally construe plaintiff's complaint, it cannot supply an essential fact an inmate has failed to
plead. *Pena*, 976 F.2d at 471 (*quoting Ivey v. Board of Regents of Univ. of Alaska,* 673 F.2d 266, 268 (9th
Cir. 1982)).

Plaintiff's Complaint is twenty-four pages long and contains a litany of complaints stemming from

ORDER
Page - 1

his incarceration at Clallam Bay Corrections Center (CBCC). Dkt. 1-2. Plaintiff complains, *inter alia*, that (1) he is an ordained minister of the Universal Life Church of the Larger Fellowship, but his religion is not recognized by the Department of Corrections; (2) he is being denied access to religious and legal materials; (3) the medical care at CBCC "is a bad joke;" (4) certain food items have been removed from CBCC's menu; (5) workers in CBCC kitchens are not paid the same wages as those in other DOC kitchens; (6) he should be provided a television at no cost; (7) Sgt. Scroggins wrongfully took nine books from his religious library; (8) he should be allowed to order religious medallions in case he decides to change his religion; (9) he has been denied the right to change his religious preference to state that he is Jewish because the policy requires that he may only change his preference every six months; (8) he has been denied dental care; (9) inmates should be allowed to share magazines; (10) inmates should be allowed to receive full frontal nude shots of women; (11) he should be allowed to dip snuff; (12) he has been denied psychiatric treatment; (13) he is being charged $0.50 per month for cable even though he has no television; (14) he is limited in the number of magazines to which he can subscribe; (15) he has to wait up to a week or more for his prescriptions to be filled; (16) Muslims, whom Plaintiff refers to as the sons of Satan, get preferential treatment because they were able to get pork taken off the menu; (17) his legal mail is opened before he signed for it; (18) although he is Roman Catholic, he cannot attend Catholic Mass because his callout is on a different day; and (19) he is being denied the privilege of being transferred to a better institution.

Plaintiff requests that (1) CBCC recognize "all federally recognized religions as real prisons do"; (2) he be transferred to Monroe Correctional Complex Washington State Reformatory or Airway Heights Corrections Center so that he can receive better medical care; (2) he be provided a television at no cost; (3) prison officials never deny him any religious books that he receives in the mail; (4) all books confiscated by Sgt. Scroggins be replaced; and (5) he be awarded $ 2 million for the emotional distress and mental cruelty he has suffered at CBCC and for the property that has been taken from him. Dkt. 1-2, p. 17. In his "Relief Attachment," Plaintiff lists additional items of relief, including reinstatement of "good meals" such as hamburgers and fried chicken; allowing him to change his religious preference whenever he wants to, and allowing inmates to receive full frontal nude shots of women. *Id*., pp. 18-19.

The Court cannot infer from the vague and conclusory statements contained in Mr. Bourne's

complaint that any of the named defendants have violated any of his constitutional rights.  To state a claim under 42 U.S.C. § 1983, a complaint must allege that the conduct complained of was committed by a person acting under color of state law and that the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986).  Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present.  *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

A plaintiff must also allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978). A theory of *respondeat superior* is not sufficient to state a § 1983 claim. *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982).

With these principles in mind, the Court offers the following guidance:

**Denial of Religious Material/Religious Preference**

Prisoners retain their First Amendment rights, including the right to the free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).   Any challenge under the free exercise clause requires plaintiff to demonstrate that the regulation at issue impacts a central religious belief or practice, one that is "mandated by his faith."  *Freeman v. Araro*, 125 F.3d 732, 736 (9th Cir. 1997); *See* e.g., *O'Lone*, 482 U.S. at 345 (Jumah service attendance is commanded by the Koran). When a prison regulation infringes upon a prisoner's constitutional rights, it is an unconstitutional violation only if the regulation is not "reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1987); *O'Lone, supra* (applying *Turner* standard to a free exercise of religion claim).

If proceeding under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000 (RLUIPA), the inmate "bears the initial burden of going forward with evidence to demonstrate a prima facie claim" that the challenged state action constitutes "a substantial burden on the exercise of his religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005).  To be considered a "substantial burden," the challenged state action "must impose a significantly great restriction or onus

upon such exercise." *Id.* at 995.  If the inmate is able to meet this burden, the state then must prove that "any substantial burden" on the "exercise of his religious beliefs is *both* 'in furtherance of a compelling governmental interest' *and* the 'least restrictive means of furthering that compelling governmental interest.'" *Id.* (quoting 42 U.S.C. § 2000cc-1(a), citing 42 U.S.C. § 2000cc-2(b)) (emphasis in original).  Further, RLUIPA "is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." *Id.*

Here, Plaintiff alleges that he is an ordained minister of Universal Life Church, that he was born and raised a Roman Catholic and cannot attend the Catholic mass, is not allowed to wear more than one religious medallion, and wishes to change his religious preference to indicate that he is Jewish but must wait because prison policy allows such changes only once every six months.  Plaintiff has not alleged that any of the named defendants have acted to substantially burden the exercise of his religious beliefs, which religious beliefs were burdened, or that the prison's six month religious preference policy (or any other prison policy) constitutes a substantial burden on the exercise of his religious beliefs.

**Denial of Medical/Dental/Psychiatric Care**

To the extent Plaintiff alleges that he has been denied medical, psychiatric and/or dental care, he must allege the factual circumstances under which he was denied such care.  He must state with specificity when, where and by whom he was denied such care.  In addition, Plaintiff is advised that to state a claim under the Eighth Amendment for lack of such care, deliberate indifference to an inmate's serious medical needs is a necessary element of the Eighth Amendment's proscription against cruel and unusual punishment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Deliberate indifference includes denial, delay or intentional interference with a prisoner's medical treatment.  *Id.* at 104-5; *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 459-60 (9th Cir. 1980).  To succeed on a deliberate indifference claim, an inmate must demonstrate that the prison official had a sufficiently culpable state of mind.  *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).  A determination of deliberate indifference involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need.  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992).  First, the alleged deprivation must be, objectively, "sufficiently serious."  *Farmer,* 511 U.S. at 834.  A "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury

or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Helling v. McKinney*, 509 U.S. 25, 32-35 (1993); *McGuckin*, 974 F.2d at 1059. Second, the prison official must be deliberately indifferent to the risk of harm to the inmate. *Farmer*, 511 U.S. at 834.

An official is deliberately indifferent to a serious medical need if the official "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. Deliberate indifference requires more culpability than ordinary lack of due care for a prisoner's health. *Id.* at 835. In assessing whether the official acted with deliberate indifference, a court's inquiry must focus on what the prison official actually perceived, not what the official should have known. *See Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). In other words an official must (1) be actually aware of facts from which an inference could be drawn that a substantial risk of harm exists, (2) actually draw the inference, but (3) nevertheless disregard the risk to the inmate's health. *Farmer*, 511 U.S. at 837-8.

Therefore, Plaintiff must state with specificity the circumstances surrounding his claims that he was denied care, including when, where and by whom he was denied care and whether his medical needs were serious and whether the defendants knew of and disregarded an excessive risk to his health or safety.

**Legal Mail**

Prison inmates have a First Amendment right to send and receive mail. *Pell v. Procunier*, 417 U.S. 817, 822 (1974). A prison may limit an inmate's constitutional rights if the restrictions are reasonably related to legitimate penological interests. *Turner v. Safely*, 482 U.S. 78, 89 (1987). The extent of a prisoner's rights with regard to the inspection of legal mail is uncertain. *Wolff v. McDonald*, 418 U.S. 539, 577 (1974). A prison policy of opening legal mail for inspection only in the presence of the inmate meets, and may even exceed, the demands of the Constitution. *Id*. However, mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail. *Keenan v. Hall,* 83 F.3d 1083 (1996), *amended by* 135 F.3d 1318 (9th Cir. 1998).

Although Plaintiff alleges that his legal mail was opened before he signed for it, he has not alleged that any of the named defendants have violated his constitutional rights regarding his mail. Plaintiff must allege the circumstances surrounding his mail claim, including who was involved, what was done, and how he was harmed.

**Eighth Amendment - Food**

The Constitution requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing. See LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir.1993). Consequently, the removal of certain food items from CBCC's menu such as fried chicken and french fries does not rise to the level of a constitutional violation. *See id.* ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation.") (internal quotation and citation omitted).

**Loss of Property**

To the extent Plaintiff alleges that the loss of his property infringes on his ability to practice his religion, Plaintiff is referred to the Court's discussion relating to the First Amendment above. To the extent that these allegations are purely for the loss of property, they do not state a valid constitutional claim because state law provides an adequate remedy for such a loss, both through the prison's internal grievance system and through Washington's Tort Claims Act, RCWA §4.92.090. *See Zinerman v. Burch,* 494 U.S. 113, 129-32, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).

**Individual Defendants**

Plaintiff is advised that he must name the individuals who are responsible for causing him harm. Plaintiff seeks to sue Eldon Vail, the Secretary of Corrections; Ron Fraker, CBCC Superintendent; and L. Rowden, CBCC's Associate Superintendent. Dkt. 1-2, p. 1. However, it is not sufficient to merely name individuals in supervisory positions. He must name the individual defendants who violated his federal rights and he must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978). A theory of *respondeat superior* is not sufficient to state a § 1983 claim. *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982).

**Transfer**

To the extent Plaintiff seeks a transfer from CBCC to another prison facility, this Court has no authority to order that state officials transfer prisoners to other facilities. In addition, inmates have no

right to placement in a particular correctional institution. *See, Meachum v. Fano*, 427 U.S. 215, 225 (1976).

### Money for Emotional Distress and Mental Cruelty

"No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *see also* 28 U.S.C. § 1346(b)(2) (similar provision added to the Federal Tort Claims Act). This provision "requires a showing of physical injury that need not be significant but must be more than *de minimus*." *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002).

Mr. Bourne asks that the Court grant him compensatory damages for mental or emotional injury but has not alleged any physical injury. As noted above, although mental and emotional distress damages are available as compensatory damages under § 1983, no compensatory damages are to be awarded for the mere deprivation of a constitutional right. *See Carey v. Piphus*, 435 U.S. 247, 264 (1978).

Due to the deficiencies described above, the court will not serve the complaint. Plaintiff must show cause explaining why this matter should not be dismissed or, alternatively, he may file an amended complaint curing, if possible, the above noted deficiencies. Plaintiff must show cause or file the amended complaint **no later than June 12, 2009.** If Plaintiff files an amended complaint under § 1983, the amended complaint shall consist of a **short and plain statement** showing that he is entitled to relief. Plaintiff shall allege with specificity the following:

    (1)    the names of the persons who caused or personally participated in causing the alleged deprivation of his constitutional rights;

    (2)    The dates on which the conduct of each Defendant allegedly took place; and

    (3)    the specific conduct or action Plaintiff alleges is unconstitutional.

Plaintiff shall set forth his factual allegations in separately numbered paragraphs and shall attach only those exhibits relevant to the factual allegations contained within the amended complaint.

Plaintiff is further advised that this amended pleading will operate as a complete substitute for (rather than a mere supplement to) the present complaint. Plaintiff shall present his complaint on the form provided by the Court. The amended complaint must be legibly rewritten or retyped in its entirety, it should be an original and not a copy, it may not incorporate any part of the original complaint by reference, and **it must be clearly labeled the "First Amended Complaint" and Cause Number C09-**

ORDER
Page - 7

**5199 BHS/KLS must be written in the caption**. Additionally, Plaintiff must submit a copy of the "First Amended Complaint" for service on each named Defendant.

**Plaintiff is cautioned that if he fails to show cause or amend his complaint by June 12, 2009, the Court will recommend dismissal of this action as frivolous pursuant to 28 U.S.C. § 1915 and such dismissal will count as a "strike" under 28 U.S.C. § 1915(g).**

The Clerk is directed to send Plaintiff the appropriate forms that he may file an amended complaint. The Clerk is further directed to send a copy of this Order and a copy of the General Order to Plaintiff.

Dated this  19th  day of May, 2009.

Karen L. Strombom
United States Magistrate Judge